This action was commenced in the superior court for Pierce county, on the petition of the *Page 675 
supervisor of the inheritance tax and escheat division of the state tax commission of the state of Washington (hereinafter spoken of as the supervisor), filed October 11, 1935, for the appointment of himself as general administrator of the estates of four hundred and forty-four persons, all of whom, it was alleged, died in Pierce county more than ten years prior to the filing of the petition, and all of whom were alleged to have been residents of Pierce county at the dates of their deaths and left estates therein subject to administration, consisting of savings accounts, checking accounts, certified checks, cashier's checks, certificates of deposit, and time deposits, in one of the banks of Tacoma; that each and all of the persons died intestate and without heirs, and that the state tax commission, through the petitioner, files the petition under Rem. Rev. Stat., § 1359 [P.C. § 9880].
On the return date fixed for hearing the petition, the Puget Sound National Bank of Tacoma appeared by motion and verified answer, asking leave to intervene and file its answer, alleging that all, or nearly all, of the parties named in the probate proceedings were either depositors in the bank or held its obligations, and that, in addition to its being a debtor, the bank occupied a position in the nature of a trustee for the persons named as decedents; and further alleging, upon information and belief, that the allegation contained in the petition for the appointment of an administrator that the parties named as decedents are dead, is incorrect. The motion to intervene and file the answer was granted, over the objection of the supervisor.
On the trial, the petition for the appointment of an administrator was denied, and the action dismissed. The supervisor has appealed.
Rem. Rev. Stat., § 1359 [P.C. § 9880], relied on by *Page 676 
the appellant as authority for bringing the action, provides, in effect, that the state board of tax commissioners shall have supervision of all matters relating to escheats; and that, whenever the board shall have information that any person possessed of property within the state has died intestate and without known heirs, the board, or any member thereof, may apply to the court for the appointment of an administrator, etc.
So, it appears that this action is to have an administrator appointed for the estates of four hundred and forty-four decedents, and to finally have an order entered escheating their property to the state.
Appellant calls attention to another statute, Rem. Rev. Stat., § 3291 [P.C. § 411], which is as follows:
"The cashier or secretary of every saving bank, [savings] and loan society, and every institution in which deposits of money are made, shall, within fifteen days after the first day of December, in the year one thousand nine hundred and five, and within fifteen days of the first day of December, of each and every second suceeding year thereafter, return to the secretary of state of the state of Washington a sworn statement showing the amount standing to his credit, the last known place of residence or postoffice address, and the fact of death if known to said cashier or secretary of every depositor who shall not have made a deposit therein, or withdrawn therefrom any part of his deposit, or any part of the interest thereon, for the period of more than ten years next preceding; and the cashiers and secretaries of such savings banks, savings and loan societies and institutions for deposit of savings shall give notice of these deposits in one or more newspapers published in or nearest to the city, county or town where such banks are situated at least once a week for four successive weeks, the cost of such publications to be paid pro rata out of said unclaimed deposits: Provided, however, that this section shall not apply to or affect the deposit made by or in the name of any person known to the said cashier or secretary to be living. The secretary of state shall annually *Page 677 
turn over all reports made by him to the attorney general for proceedings for forfeiture, if he shall be so advised."
The appellant was the sole witness at the trial. In his own behalf, he testified to an instrument, introduced in evidence over objection, which contains in one column the names of all the parties whose estates are sought to be administered, in a second column the addresses of nearly all of the persons named, and in a third column a stated amount of money for each of the decedents' estates, the amounts varying from seven cents to something over two hundred dollars, or a general average of twelve or fifteen dollars. The body of the instrument contains no other information. Attached to it is what purports to be an affidavit, subscribed and sworn to before a notary public, as follows:
"I, C.E. Lindquist, being first duly sworn, on oath depose and say:
"That I am Cashier of THE PUGET SOUND NATIONAL BANK OF TACOMA, Tacoma, Washington, an institution for the deposit of savings;
"That the foregoing is a full, true and correct statement according to the best of my knowledge, information and belief of the name and last known residence or post office address of each person having on the 1st day of December A.D. 1931 a savings deposit account in said bank who had not within the period of ten years next preceding said 1st day of December A.D. 1931 made a deposit therein or withdrawn therefrom any part of such deposit, or interest thereon, and of the amount standing to his credit, and the fact of death of such depositor wherever to me known.
"Further deponent saith not.
C.E. Lindquist, Cashier."
The face of the instrument bears a rubber stamp endorsement, as follows:
"Received November 17, 1933 A.M. Ernest N. Hutchinson, Secretary of State." *Page 678 
Whether this endorsement was made by the secretary of state or intended to be his signature, the evidence does not show. No one from his office was called to testify, nor is the endorsement or the filing of the instrument certified to by his office or under his official seal.
Referring to this instrument, appellant says, in his brief, that the supervisor "testified that this statement was handed over to him for the purpose of escheating said estates under the above provision," Rem. Rev. Stat. § 3291 [P.C. § 411]. That statute does not refer to escheats.
Upon admitting the instrument in evidence, the appellant testified:
"Q. May I ask, have you any other evidence of the death of any of these people? A. All I have is this, that I have made some investigation to locate these people and have been unable to locate any of them, but that is all I know; that is all the evidence we will have on that."
[1] The first assignment is that the court erred in allowing the bank to intervene. There are three answers to this assignment: (1) In its application to intervene and in its answer, the bank alleged that, in addition to its being a debtor of the parties named as decedents, it bore a relation in the nature of a trustee for those parties; (2) the bank did not call any witness whatever; and (3) what may appear upon its face to be error, if any, affecting a party not entitled to suceed, in any event is harmless.
[2] The only other assignment is that:
"The trial court erred in ruling that there was insufficient proof of death of the persons, and in refusing to grant letters of administration and dismissing the action."
This is the real question in the case, and, in our opinion, Rem. Rev. Stat., § 3291 [P.C. § 411], above *Page 679 
quoted, and the statement purported to have been made by the cashier of the bank, have no bearing on the question. That statute and the cashier's statement it provides for have nothing to do with escheats. They are meant as initiatory measures in the nature of information to the Attorney General that he may proceed to forfeit non-active bank accounts, which right of the state is not dependent on the death of the depositor. Even for the purpose of forfeiture, if, with or without the testimony or official certificate and seal of the secretary of state that the instrument was lodged in his office, it be assumed that it was so filed, it would not, under the statute or otherwise, constitute evidence of anything other than the mere fact of the filing of the instrument. Nor does the filing of it prove that the bank cashier signed or swore to it, or that the notary signed and attached his official seal to it. There is no actual testimony upon that subject, and the statute gives the filing no effect whatever as proof of anything. Sometimes an instrument, executed and filed as required or provided by law and certified by the proper official custodian of it, constitutes proof as provided in the statute, but this is not that kind of instrument or statute.
But, as we have stated, this is not a forfeiture proceeding. It is a probate proceeding requiring proof of the deaths of persons whose estates are sought to be administered and escheated. The purported statement of the cashier of the bank, including his affidavit, is of no value here. In it, he does not mention the death of any one of the persons. He affirms that the statement is a full, true, and correct statement of several things enumerated therein "and the fact of death of such depositor wherever to me known;" and, since he nowhere states the death of any, it follows that the sum total of his statement is that he does not know *Page 680 
that any one of them is dead. Everything in the statement may be true, and yet he may have seen each one of the persons dozens of times in the last year or two. His statement does not so much as say that he ever knew or heard of the disappearance of any one of them.
What, if anything else, is there in this case that tends to show the death of these parties? Nothing. Appellant himself testified:
"All I have is this, that I have made some investigation to locate these people and have been unable to locate any of them."
That cannot be accepted as proof of the death of the four hundred and forty-four named decedents or any one of them.
Judgment affirmed.
ALL CONCUR.